UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **EUGENE LONG,** *Plaintiff* | § § § |
| v. | § §   No. 1:22-CV-01273-ADA |
| **CITY OF LLANO,** *Defendant* | § § § § |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ALAN D. ALBRIGHT
      UNITED STATES DISTRICT JUDGE

Plaintiff Eugene Long, former Director of Public Works for the City of Llano, sued the City following the termination of his employment, alleging violations of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, and the Texas Commission on Human Rights Act (TCHRA), Tex. Labor Code §§ 21.001, et seq. Dkt. 1, at 3-4. Before the Court is Defendant City of Llano's motion for summary judgment, Dkt. 14. For the reasons stated below, the undersigned recommends that the District Judge grant the motion.

### I.   BACKGROUND

Long began working for the City of Llano in 1996. Dkt. 14-1, at 4. At the time of his termination in August 2021, Long was 57 years old and working as the Director of Public Works, a position he had held since 2006. Dkts. 14-1, at 3; 14-2, at 13. As Director of Public Works, Long reported to the City Manager. Dkt. 14-1, at 9. Scott Edmonson was the City Manager in 2016. *Id.* at 10-11. While Edmonson was City

1

Manager, he conducted several written evaluations of Long. His last evaluation in 2019 noted a number of performance issues, including that Long needed to "make sure work orders are getting completed" and "keep track of employees." Dkt. 14-2, at 6.

In 2021, Erica Berry was named Interim City Manager. Dkt. 14-1, at 13. Berry also noticed performance issues. In a termination survey for Long, Berry reported that she received a police report that Long had put a boat in the water in Badu Park in violation of a city ordinance. Dkt. 14-2, at 7. Further, Berry noted that Long had allowed three electric crewmen to work for 36 hours straight, which Berry classified as "employee endangerment." *Id.* Berry was also made aware by City Attorney Luke Cochran and Litigation Attorney Chris Stanley that Long had failed to manage a paving project correctly, leading to the City's inability to litigate the case. *Id.* Berry also noted that Long had "exhibited a general dereliction of duties under his control," including: "the shredding and/or mowing at the airport that [Long] said was done, has not in fact been done; the contract with Heartland for the splash pad ran significantly behind schedule and over funding due to his mismanagement; street signs that are needed to be installed this week, that [Long] was instructed to order three weeks ago, had not been ordered; significant damage was done to City equipment and [Long] refused to reprimand his employees or counsel them on safety awareness; [Long]'s departments do not do safety inspections on their trucks or equipment; [and] street lights that have been out for over a year have not been replaced which creates a safety concern for all citizens." *Id.*

Long takes issue with some of those complaints. For instance, Long argues that he was in the right concerning the "boat incident." Long says that he "was never cited by the police" because "he had broken no laws." Dkt. 16, at 1. "In regard to the power pole issue," Long claims that he "never left any of his staff unsupervised for 36 hours." *Id.* at 2. Long also claims that the City "omitted crucial facts regarding the splash pad and paving projects," specifically that a company called Cox Paving was to blame for the shoddy work. *Id.* at 3. Finally, in regard to the splash pad, Long emphasizes that he "found problems with the work" related to flood repairs and "instruct[ed] that the invoices not be paid because the work was done incorrectly." *Id.*

Prior to Long's August 2021 termination, City Manager Berry and Mayor Gail Lang met with Long to discuss these issues. Dkt. 14-2, at 7. Long was told that he could voluntarily retire or be terminated due to his conduct. In his deposition, Long recalled that he was told, "Today is going to be your last day, and I'd prefer you retire." Dkt. 14-1, at 39. It was Long's understanding that Berry made the decision to terminate him, though he believed that Josh Becker and Mike Scoggins were "possibly" involved. *Id.* at 41. At the time, Becker and Scoggins were in other groups of city government. *Id.* at 42. Following Long's termination, his position as Director of Public Works was eliminated. *Id.* at 45-46.

In support of his claim of discrimination, Long points to three conversations in which he was asked about retirement. The first involved Josh Becker, wherein Becker asked Long about retirement "several times." *Id.* at 31-32. The second involved Allen Hopson, who asked "a general question" about retirement. *Id.* at 33. The third

involved Becker again, this time in a meeting with a contractor. During the conversation, Becker "shoved" retirement papers to Long and said, "I suggest you retire." *Id.* at 34-35. Long concedes that Becker did not have the ability to fire him. *Id.* at 37.

In December 2021, Long filed a Charge of Discrimination with the EEOC alleging discrimination on the basis of age. Dkt. 14-2, at 12. A year later, he filed this suit against the City. Dkt. 1.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary

judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

B. **ADEA and TCHRA**

Under the ADEA and TCHRA, it is unlawful for an employer to discharge any individual because of the individual's age. "Section 21.051 is substantively identical to its federal equivalent in Title VII," and the ADEA protects age in employment claims using a similar analysis as is used in Title VII. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475 n.2 (Tex. 2001); *see also* Tex. Lab. Code § 21.001 ("The

general purposes of this chapter are to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."). The Court will therefore analyze Long's ADEA and TCHRA claims together using the Title VII framework for a discrimination case.

A plaintiff may prove employment discrimination through direct or circumstantial evidence. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact. *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Circumstantial evidence requires the trier of fact to infer a nexus between the evidence and his termination. *Id.* In cases where there is only circumstantial evidence in the record, courts apply the *McDonnell Douglas* burden-shifting framework. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012). To establish a prima facie case of employment discrimination under the McDonnell Douglas framework, a plaintiff must demonstrate: "(1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged or suffered some other adverse employment action; (4) he was replaced with a person outside of the protected class, or he was treated less favorably than similarly situated employees of a different [class]." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

If the plaintiff can present a prima facie case, the burden shifts to the defendant to rebut the plaintiff's case by articulating a legitimate, nondiscriminatory justification for its actions. *Id.* at 456. If the defendant offers such a justification, the

burden shifts back to the plaintiff to produce sufficient evidence to show that the defendant's given reason is pretext for discrimination. *Id.* To show pretext, the plaintiff must put forward substantial evidence to rebut each of the nondiscriminatory reasons the employer articulates. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). At all stages of the *McDonnell Douglas* analysis, the burden of persuasion remains on the plaintiff; the burden on the defendant in the second step is merely a burden of production. *Black v. PanAmerican Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011).

### III. DISCUSSION

Long does not contend that he has direct evidence of the City's alleged discrimination. *See* Dkt. 16, at 7. Accordingly, the Court will consider his claims within the *McDonnell Douglas* framework.

#### A. Step 1: Long's Prima Facie Case

As noted above, to state a prima facie case, Long must show (1) he was in the age group the ADEA protects, (2) he was qualified for his job, (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *McDonnell Douglas*, 411 U.S. at 802. The Fifth Circuit has held that "[o]nly a minimal showing is necessary to meet this burden of establishing a prima facie case." *Sears v. Zions Bancorporation NA*, No. 21-10448, 2022 WL 1800779, at *2 (5th Cir. 2022) (citing *Bauer v. Albemarle*

*Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)). The City here argues that Long has failed to meet this minimal burden as to the fourth element.[1]

To satisfy this element, Long need only demonstrate that he was replaced by someone younger or that he was treated less favorably than other similarly situated employees, not both. *See Caroselli v. Dynamic Sys., Inc.*, No. 1:21-CV-220-DAE, 2022 WL 14793770, at *4 (W.D. Tex. Sept. 27, 2022). Long claims that "[e]very single other city employee was treated more favorably" than he was. Dkt. 16, at 8. But Long provides no examples of improper treatment other than his bare allegation that he was fired because of his age. Accordingly, Long must demonstrate that he was replaced by someone younger in order to establish a prima facie case of age discrimination under the ADEA and TCHRA. *See Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 310 (Tex. 2020).

Here, Long argues that while his position was "technically eliminated," the duties were divided up among other City employees, including a Josh Becker, who Long claims "was significantly younger than" him. Dkt. 16, at 7. "[A] terminated employee has not been 'replaced' when his position is eliminated and his former duties are distributed among other co-workers." *Rexses v. The Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010); *see also Dulin v. Dover Elevator Co.*, 139 F.3d 898 (5th Cir. 1998) (holding that plaintiff failed to establish prima facie

---

[1] The City's motion argues that Long "cannot establish elements (3) or (4)," but the City only makes argument with respect to the fourth element. *See* Dkt. 14, at 9. The City references a different set of four elements in its reply brief, but the case cited there appears to deal with a subset of claims related to reductions in force that does not apply here. *See* Dkt. 20, at 3 (citing *Chavarria v. Despachos Del Notre, Inc.*, 390 F. Supp. 2d 591, 596 (S.D. Tex. 2005)).

case of age discrimination where his position was eliminated and his employer divided his duties among two existing employees).

Accordingly, the undersigned concludes that Long has failed to establish a prima facie case of discrimination under the ADEA or TCHRA. That alone is enough to resolve the case. However, for the sake of completeness, the undersigned will consider the remaining steps in the *McDonnell Douglas* framework.

### B.  Step 2: The City's Legitimate, Nondiscriminatory Justification for Its Actions

Had Long provided prima facie evidence of age discrimination, the burden would shift to the City to assert a legitimate, non-discriminatory reason for Long's termination. Where "the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action." *Grelle*, 539 F. Supp. 3d at 665 (italics omitted). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "The burden on [defendants] to produce a legitimate nondiscriminatory reason for terminating [a plaintiff] is one of production, not persuasion; it can involve no credibility assessment." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002) (quotation omitted); *see Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016) (finding defendant met its burden of production when it produced evidence that it terminated an employee because she had missed deadlines and attempted to conceal that information).

The City points to several facts to support its legitimate, nondiscriminatory justifications for terminating Long. Dkts. 14, at 9-11; 20, at 4-6. First, the City cites a 2019 performance evaluation in which Long's supervisor warned him that he needed to improve his monitoring of employees, ensure work orders in his department were completed, and improve his relationships within the department. *See* Dkt. 14-2, at 4-6. The City notes that despite these warnings, Long continued to have issues that created significant problems for the City, including delayed and otherwise problematic projects. *See id.* at 7-8. The City also points to two incidents—one in which a crew was not properly supervised during a power outage and one in which Long had an encounter with local police over his alleged improper boat usage—that occurred approximately one month before he was terminated. *See id.* at 7-8, 10-11.

As for the performance evaluation, Long responds that it is irrelevant because he was never actually disciplined for the alleged shortcomings and because these were not cited as a basis for his termination. Dkt. 16, at 8. With respect to the power-outage and boat incidents, Long challenges the City's depiction of these events. *See* Dkt. 16-1, at 1-2. Finally, Long contends that the City's reference to project issues cannot be legitimate reasons for terminating him, considering they happened multiple years before his termination and that his actions actually benefitted the City. Dkt. 16, at 8.

But Long's protestations do not overcome the City's minimal burden of production. At this stage of the *McDonnell Douglas* framework, a reason for termination does not need to be compelling or persuasive. Indeed, "even an incorrect

belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). Accordingly, the undersigned finds that the City has met its burden to provide a legitimate, nondiscriminatory reason for terminating Long.

### C. Step 3: Pretext

Where, as here, a defendant has met their burden to provide a legitimate, nondiscriminatory reason for its action, the burden shifts to the plaintiff to "offer sufficient evidence to create a genuine issue of fact that either: (1) a defendant's reason is not true, but is instead a pretext for discrimination, or (2) a defendant's reason, though true, is only one of the reasons for its conduct and that another 'motivating factor' is the plaintiff's protected characteristic." *Grimes v. Wal-Mart Stores Tex., LLC*, No. MO-10-CV-067, 2012 WL 12883129, at *3 (W.D. Tex. Feb. 23, 2012), *aff'd sub nom. Grimes v. Wal-Mart Stores Tex., L.L.C.*, 505 F. App'x 376 (5th Cir. 2013). Importantly, a plaintiff "must prove that the proffered reasons are not just pretexts but pretexts for … discrimination." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (emphasis omitted). Put another way, a plaintiff must prove "that the employer's reasons were not the true reason for the employment decision *and* that unlawful discrimination was." *Id.*

Long has not demonstrated that the City's stated reasons for his termination are pretextual. Consider, for instance, "the boat issue." Long claims that "the boat issue cited by Defendant is completely mischaracterized" because Long "had broken no laws." Dkt. 16, at 1. But it does not matter whether Long "actually" broke the

law—what matters is that City Manager Erica Berry received a police report from Chief Scoggins that Long had put a boat in the water in violation of a City Ordinance. Dkt. 14-2, at 7. "The issue at the pretext stage is whether the employer's reason, even if incorrect, was the real reason for the plaintiff's termination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (cleaned up). Long has provided no reason for the undersigned to conclude that Chief Scoggins's report was a mere pretext for age discrimination.

Long's other arguments for pretext—that he was not at fault for the pole issue, that he did not allow his subordinates to work 36 hours straight, and that the splash pad issues were caused by Cox Paving—fail for the same reasons. Because Berry's actions were motivated by reports from others, including Chief Scoggins and City Attorney Luke Cochran, it is immaterial whether the underlying facts of those reports are correct. Because Long has failed to establish pretext, his claims for age discrimination fail.

### D. Cat's Paw Theory

Finally, Long argues that Berry's decision to terminate him was influenced by Josh Becker, and that Becker's discriminatory animus can therefore be imputed to Berry under a "cat's paw" theory. *See Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 914 (S.D. Tex. 2007) ("The 'cat's paw' theory recognizes that the discriminatory animus of a manager can be imputed to the ultimate decision maker if the decision maker acter as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice.") (quotation omitted). "To invoke the cat's paw analysis, [a plaintiff] must

12

submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Services*, 373 F.3d 647, 653 (5th Cir. 2004) (quotation omitted).

Even assuming that Becker's comments surrounding retirement constitute discriminatory animus, *see supra* at 3-4, Long has failed to show that Becker possessed leverage or exerted influence over Berry. Long claims that "Becker was close with Berry and that her decisions were influenced by Becker on numerous occasions, including managing the budget, employee salary decisions and the sale of city equipment." Dkt. 16, at 9. But Becker's position included supervising the budget for all departments, so he would naturally share his opinions with the city manager on such matters. Much more is needed to invoke the cat's paw theory of liability: "[t]he degree of leverage that the 'cat's paw' must exercise is high." *Sabatelli v. Baylor Scott & White Health*, No. 1:16-CV-596-RP, 2017 WL 9325617, at *4 (W.D. Tex. Oct. 4, 2017), *aff'd*, 832 F. App'x 843 (5th Cir. 2020). Because Long has failed to establish that Becker was the "de facto decision maker" for Long's termination, *id.* at *3, his cat's paw theory fails.

\* \* \*

To summarize, the City's Motion for Summary Judgment should be granted on two independently sufficient grounds. First, Long failed to demonstrate that he was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. Accordingly, he failed

13

to establish a prima facie case. Second, Long failed to establish that the City's legitimate, nondiscriminatory reasons for his termination were pretextual.

## IV.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant's Motion for Summary Judgment, Dkt. 14. **IT IS FURTHER ORDERED** that this case be removed from the Magistrate Judge's docket and returned to the docket of the Honorable Alan D. Albright.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 26, 2024.

                                                DUSTIN M. HOWELL

                                                UNITED STATES MAGISTRATE JUDGE